IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| JANET GONZALEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 10-2188 |
| § | |
| BELINDA CARON, JAMES CARON, § | |
| and BRITTANY CARON, § | |
| § | |
| Defendants. § | |

## COMPLAINT

**I.  Preliminary Statement**

1.1  Plaintiff Janet Gonzalez brings the following civil action for damages and declaratory relief against Belinda Caron, James Caron, and Brittany Caron, the adult members of the Caron family. The Carons recruited and hired Ms. Gonzalez to be a Monday through Friday live-in housekeeper at their home in rural Montgomery County.  The Carons promised to pay Ms. Gonzalez $350.00 per week and to transport her to and from the Shady Grove Metro station at the beginning and end of each work week.  After Ms. Gonzalez began working, the Carons repeatedly refused to pay Ms. Gonzalez and refused to transport her to the Metro station so she could return to her home in Washington, D.C.  Initially the Carons repeatedly promised to pay Ms. Gonzalez "next week" each time she asked for the wages she had earned. Later when Ms. Gonzalez asked to be paid, the Carons became more threatening, verbally abusive and physically intimidating.  While working and living with the Carons, the Carons restricted Ms. Gonzalez's access to telephones and computers, and Ms. Gonzalez had no car and virtually no money. Eventually,  Ms. Gonzalez learned about and called a human trafficking hotline and referred her

to CASA of Maryland. Thereafter, a group of workers from CASA of Maryland helped her leave the house and return to Washington, D.C. Ms. Gonzalez worked seven days a week for over four months and was paid nothing.

1.2     The action is based on Defendants' violations of Plaintiff's rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, *et seq.*, the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1590, 1595, Montgomery County Code, Chapter 11, § 11-4B, and on Defendants' breach of contract, fraudulent misrepresentation and negligent misrepresentation and negligence.

## II.     Jurisdiction and Venue

2.1     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over claims arising under laws of the United States) and 28 U.S.C. § 1337 (conferring jurisdiction over claims arising under the Acts of Congress regulating commerce).

2.2     The federal claims in this action are authorized and instituted pursuant to 29 U.S.C. § 216(b) (FLSA), and 18 U.S.C. § 1595(a) (TVPA).

2.2     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b).

2.3     This Court has supplemental jurisdiction over the state law claims, under 28 U.S.C. § 1367, because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

2.4     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**III.   The Parties**

3.1   Plaintiff Janet Gonzalez is a resident of Washington, D.C.

3.2   Plaintiff is a native Spanish speaker. She understands some simple English, but cannot communicate well in English and generally speaks only Spanish.

3.3   Plaintiff was a "domestic worker" under Montgomery County Code Sec. 11-4B(b).

3.4   Defendant Belinda Caron is a resident of Montgomery County, Maryland. She may be served with process at her residence and home-office located at 21414 Peach Tree Rd., Dickerson, MD 20842.  She is the wife of Defendant James Caron and the mother of Defendant Brittany Caron.

3.5   Defendant James Caron is a resident of Montgomery County, Maryland. He may be served with process at his residence located at 21414 Peach Tree Rd., Dickerson, MD 20842.  He is the husband of Defendant Belinda Caron and the father of Defendant Brittany Caron.

3.6   Defendant Brittany Caron is a resident of Montgomery County, Maryland. She may be served with process at her residence located at 21414 Peach Tree Rd., Dickerson, MD 20842.  She is the daughter of Defendant James Caron and Defendant Belinda Caron.

3.7   Defendants engaged in interstate commerce within the meaning of the FLSA.

3.8   Defendants employed Plaintiff within the meaning of the FLSA, the MWHL, and the MWPCL.

3.9   Defendants' were employers of Plaintiff under Montgomery County Code Sec. 11-4B(b).

**IV.   Statement of Facts**

4.1   Defendants placed an ad on the internet classified ad site, Craigslist, seeking a Spanish-speaking housekeeper.

4.2   The ad offered pay of $350.00 per week for washing and ironing.

4.3   On September 19, 2009, Plaintiff responded to the ad by e-mail and indicated that she was interested in the job.

4.4   Defendant Belinda Caron replied by e-mail and she and Plaintiff arranged to speak on the telephone.

4.5   Plaintiff called Defendant Belinda Caron on September 19, 2009.  Defendant Belinda Caron told Plaintiff that she wanted a Spanish-speaker to be a Monday to Friday live-in housekeeper to wash and iron her work clothes.

4.6   On the phone, Defendant Belinda Caron told Plaintiff the pay would be $350.00 per week with experience.

4.7   On the phone, Defendant Belinda Caron told Plaintiff that Plaintiff did not need a driver's license because Defendant Brittany Caron could drive her.

4.8   On the phone, Defendant Belinda Caron arranged with Plaintiff to meet for an interview at the Shady Grove Metro stop at 2:00 p.m. the following day, September 20, 2009.

4.9   On September 20, 2009, Plaintiff traveled by Metro to Shady Grove and met all Defendants in the station parking lot.  The Defendants interviewed Plaintiff in their vehicle.

4.10  Defendant Brittany Caron told Plaintiff that they would pay her $350 per week, with experience, to do washing and ironing as a Monday to Friday live-in housekeeper.

4.11  Defendant James Caron asked Plaintiff if she had experience cooking.

4.12  Plaintiff told Defendants that she had experience as a housekeeper and as a cook.

4.13  Defendant Brittany Caron told Plaintiff that generally she would be paid at the end of each month, but that her first pay would come after two weeks of work.

4.14  Defendant Brittany Caron told Plaintiff that she would transport her to and from the Metro station at the beginning and ending of each work week.

4.15    Defendants offered and Plaintiff accepted the employment on the terms outlined above.

4.16    Defendants and Plaintiff entered into a contract on those terms.

4.17    Plaintiff was at all times ready to comply with the terms of the contract and did in fact comply with the terms.

4.18    Plaintiff relied on the Craigslist advertisement, the statements of Defendant Belinda Caron on the telephone, and the statements of Defendants during the in-person interview in accepting the job and in performing work for Defendants.

4.19    Defendants did not intend to abide by the terms of this agreement.

4.20    Defendant Brittany Caron told Plaintiff that if she started work the following day, a Monday, she needed to stay at Defendants' house that night.

4.21    Plaintiff traveled to her residence to collect clothes for the week and then returned to the Shady Grove Metro station where she was picked up by Defendant Brittany Caron and driven to Defendants' house.

4.22    That evening, Defendants explained in greater detail the work Plaintiff would do and the following day Plaintiff began her work as a housekeeper.

4.23    Plaintiff worked for Defendants from September 21, 2009 through January 31, 2010.

4.24    During that time, she had approximately two days off.

4.25    Plaintiff worked over forty hours in each work week during that time.

4.26    Plaintiffs' work consisted of cleaning the house and home-office, doing the laundry, washing the dishes, cooking, caring for Defendants' pets, waiting on Defendants, and performing other odd jobs.

4.27    Defendants paid Plaintiff nothing for her work.

4.28    On or about the first Friday that Plaintiff worked for Defendants, September 25, 2009, Defendants Belinda Caron and Brittany Caron told Plaintiff that she should stay with them that weekend so that they could get acquainted and so that they could take Plaintiff horseback riding.

4.29    Plaintiff relied on these statements and agreed to stay that weekend so that she could see the horses.

4.30    On that Saturday, the Caron family went out and left Plaintiff at the house to work and on that Sunday Defendant Belinda Caron worked away from the home most of the day and left Plaintiff to work at the house.

4.31    Plaintiff's first pay day was to be October 2, 2009.

4.32    At approximately noon on October 2, 2009, Defendant Belinda Caron told Plaintiff that she did not have money to pay her then, but she would pay her the following Wednesday.

4.33    Plaintiff relied on this statement in continuing to perform work for Defendants and in deciding to stay at Defendants' home.

4.34    Plaintiff's October rent for her residence in Washington, D.C. was due, but due to non-payment of her wages earned, she could not pay the rent.

4.35    Plaintiff called her landlord and asked if she could pay him the rent the following Friday and he agreed.

4.36    At approximately noon the following Wednesday, October 7, 2009, Defendant Belinda Caron told Plaintiff that she would not be able to pay her for another two weeks.

4.37    Plaintiff relied on this statement in continuing to perform work for Defendants and in deciding to stay at Defendants' home.

4.38    Plaintiff again called her landlord and asked if she could pay the October and November rent at the end of October.  The landlord agreed.

4.39    By the following Friday, Plaintiff had approximately only $2.00 and was worried about being able to afford to get home on Friday and back to Shady Grove on the Metro on Sunday.

4.40    At the end of October or beginning of November, Defendant Belinda Caron told Plaintiff that it would be another two weeks before she could pay Plaintiff.

4.41    Although Plaintiff began to think Defendants had no intention of paying her, Plaintiff had no money and no way to pay for her apartment with rent now overdue and felt that she had no choice but to rely on this statement in continuing to perform work for Defendants.

4.42    In or about the first week of November, Plaintiff told Defendant Brittany Caron to tell Defendant Belinda Caron that Plaintiff needed to be paid because she would lose her residence in Washington, D.C. if she did not pay the rent.  Defendant Brittany Caron did so.

4.43    Defendant Brittany Caron then told Plaintiff that her mother said that she did not want to talk about it.

4.44    Immediately thereafter, Defendant Belinda Caron told Plaintiff that she would pay her the following Monday.

4.45    Plaintiff relied on these statements in continuing to perform work for Defendants.

4.46    Each time Defendants made a promise to pay Plaintiff, they did so with no intention of making such payment, with the intent to deceive Plaintiff, and with the intent to keep her working for them.

4.47    Each time Defendants made the promise to pay her, Plaintiff relied on the promise and continued working at the house as a result.  Initially she did so expecting that she would be paid what she earned.  Later, she relied on the promise with the hope that she would be paid at least enough to get back to Washington, D.C., pay her rent, and save her residence.  Finally, she relied

on the promise with the hope that she would be paid at least enough to safely return to Washington, D.C.

4.48    Defendants restricted Plaintiff's access to the telephone and to computers.

4.49    Plaintiff asked Defendants to take her to the Metro station and Defendants refused to take her.

4.50    Plaintiff witnessed Defendants refusing to pay other Latino workers who performed odd jobs for Defendants.

4.51    On one occasion in or about late December, when some of these workers asked to be paid, Defendant James Caron yelled at the workers and threatened them with being arrested. Defendant Brittany Caron then told Plaintiff that the police were outside and her father claimed that the workers had been doing drugs.

4.52    On or about December 12, 2009, Plaintiff again asked Defendant Belinda Caron to pay her.  Plaintiff stated that she wanted to go back to Washington, D.C.  Defendant Belinda Caron refused to take Plaintiff to the Metro station and stated that she could not pay Plaintiff.

4.53    Defendant Belinda Caron told Plaintiff that if there was a problem her husband would call the police and that the police arrest whomever he wanted because he was a Captain with the fire department and he knew them.

4.54    Defendant Belinda Caron then told Plaintiff that she could not leave at that time because there would be nobody to take care of the children.  Defendant Belinda Caron told Plaintiff that things would be better in April because Defendant Belinda Caron's father was going to give the family a large sum of money.

4.55    Later that evening, Defendant Belinda Caron said she could not pay Plaintiff because it was a Saturday.

4.56    In or about January of 2010, Plaintiff saw a human trafficking hotline advertised on television. Once she was able to gain access to a telephone she called the number and was eventually put in touch with an employee of CASA of Maryland. CASA of Maryland arranged for a group to go to Defendants' house and to take Plaintiff from the house.

4.57    While Plaintiff worked for Defendants, Plaintiff lost her residence in Washington, D.C. All of her personal property, other than the week's worth of clothes she had packed and brought with her in September, were put in storage by her landlord who then left the country.

4.58    Defendants' actions in securing and maintaining Plaintiff's employment without pay, as described above, were willful, malicious and outrageous.

4.59    Defendants breached their contract with Plaintiff by not transporting her to and from the Metro station at the beginning and ending of each work week and by not paying Plaintiff for her work.

4.60    Plaintiff suffered injury, including but not limited to lost wages, as a result of the breach of contract.

4.61    Defendants, as employers and/or joint employers, hired and suffered or permitted Plaintiff to perform the following work: cleaning the house and home-office, doing the laundry, washing the dishes, cooking, caring for Defendants' pets, waiting on Defendants, and performing other odd jobs.

4.62    Defendants failed to compensate Plaintiff at least the federal and state minimum wage per hour worked in each work week as required by the FLSA and the MWHL.

4.63    Defendants failed to compensate Plaintiff at a rate of one and a half times her regular hourly rate for every hour worked in excess of forty hours a given work week as required by the MWHL.

4.64    Defendants failed to set regular pay periods and timely pay wages to the Plaintiff as required by the MWPCL.

4.65    Defendants failed to pay Plaintiff all wages due for work performed before the termination of Plaintiff's employment, as required by the MWPCL.

4.66    Defendants' failure to pay all wages due and owing to Plaintiff was willful, deliberate and/or in reckless disregard to the rights of Plaintiff to be paid fully and timely for work performed, including overtime and not the result of a bona fide dispute.

4.67    Defendants did not obtain either a written employment contract signed by both Defendants and Plaintiff or a disclosure statement signed by Plaintiff as required by Montgomery County Code Sec. 11-4B(c).

4.68    Defendants did not provide living accommodations to Plaintiff that met the standard required by Montgomery County Code Sec. 11-4B(d) in that Plaintiff's room did not have a door which could be locked.

**V.    Causes of Action**

**FIRST CAUSE OF ACTION:**

**FAIR LABOR STANDARDS ACT (FLSA)**

5.1    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.2    Defendants violated Plaintiff's rights under the FLSA by failing to pay her the minimum wage for each hour worked in each discrete work week in violation of the FLSA.  29 U.S.C. § 206 (a)(1).

5.3    Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255.

5.4    Defendants are liable to Plaintiff for her unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

## SECOND CAUSE OF ACTION:

## MARYLAND WAGE AND HOUR LAW

5.5    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.6    Defendants failed to pay Plaintiff's minimum wages in violation of Md. Code Ann., Lab & Empl. § 3-413.

5.7    Defendants failed to pay Plaintiff's overtime wages in violation of Md. Code Ann., Lab & Empl. § 3-415 and § 3-420.

5.8    Defendants are liable to Plaintiff pursuant to Sections 3-427(a) and (d) of the MWHL for her unpaid wages, including any overtime owed, plus interest, reasonable attorney's fees and costs, and any other appropriate relief.

## THIRD CAUSE OF ACTION:

## MARYLAND WAGE PAYMENT AND COLLECTION LAW

5.9    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.10   Defendants failed to pay Plaintiff all wages due, including overtime, on her regular paydays, in violation of Md. Code Ann., Lab & Empl. § 3-502.

5.11   Defendants failed or refused to pay Plaintiff all wages due for work that she performed before the termination of her employment, in violation of Md. Code Ann., Lab & Empl. § 3-505.

5.12   Defendants' failure to pay all required wages in a timely and regular manner violated the MWPCL.

5.13    Pursuant to Md. Code Ann., Lab & Empl. § 3-507.1, Plaintiff seeks unpaid wages, treble damages, interest, reasonable attorneys fees and costs, and any other relief deemed appropriate by the court.

## FOURTH CAUSE OF ACTION:

## TRAFFICKING VICTIMS PROTECTION ACT (TVPA) – Forced Labor

5.14    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.15    18 U.S.C. § 1589(a) provides that it is unlawful to "knowingly provide[] or obtain[] the labor or services of a person by any one of, or by any combination of, the following means—(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

5.16    The TVPA's Purpose and Findings state explicitly that crimes of involuntary servitude include those perpetrated through psychological abuse and non-violent coercion.

5.17    Defendant subjected Plaintiff to forced labor in violation of 18 U.S.C. § 1589(a).

5.18    Defendants Belinda Caron and James Caron knowingly caused Plaintiff serious harm and threatened Plaintiff with serious harm in order to obtain her labor and services in violation of 18 U.S.C. § 1589(a)(1).

5.19    Defendants threatened Plaintiff with false allegations of criminal conduct and/or arbitrary arrest in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589(a)(3).

5.20    Defendants knowingly obtained the labor and services of Plaintiff in violation of 18 U.S.C. § 1589(a)(4) using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce Plaintiff to believe that she would suffer serious harm if she did not continue to perform labor or services for them.

5.21    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover compensatory and punitive damages, reasonable attorney's fees, and costs for Defendants' wrongful conduct.

## FIFTH CAUSE OF ACTION:

## TRAFFICKING VICTIMS PROTECTION ACT (TVPA) – Trafficking

5.22    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.23    18 U.S.C. § 1590 provides that "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter," including, but not limited to, the laws prohibiting forced labor and peonage, has engaged in unlawful behavior under the TVPA.

5.24    Defendants violated 18 U.S.C. § 1590 by knowingly recruiting, harboring, transporting, providing and/or obtaining Plaintiff for labor or services in violation of the laws prohibiting forced labor and peonage.

5.25    Defendants attempted to and did violate the TVPA prohibition against forced labor set forth in 18 U.S.C. § 1589 as alleged above in paragraphs 5.14 to 5.21.

5.26    Defendants attempted to and did violate 18 U.S.C. § 1581 by holding Plaintiff in a condition of peonage.

5.27    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover compensatory and punitive damages, reasonable attorney's fees, and costs for Defendants' violations of 18 U.S.C. § 1590.

## SIXTH CAUSE OF ACTION:

## BREACH OF CONTRACT

5.28	Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.29	Defendants entered into an employment contract with Plaintiff.

5.30	Plaintiff performed her obligations under the contract.

5.31	Defendants breached the contract by failing to comply with the terms and conditions promised, as outlined above.

5.32	As an actual and direct consequence of Defendants' breach, Plaintiff suffered damages and economic injury.

5.33	Defendants are liable to Plaintiff for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by state common law, including unpaid wages, damages arising from the delay, and prejudgment interest.

## SEVENTH CAUSE OF ACTION:

## FRAUDULENT MISREPRESENTATION

5.34	Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.35	Defendants made statements to Plaintiff, as specified above, which they knew to be untrue or for which they had such reckless indifference for their truth that they were equivalent to actual knowledge of their falsity.

5.36	Defendants made these statements with the intent of defrauding Plaintiff and inducing Plaintiff to continue working for them and to refrain from leaving their home.

5.37	Plaintiff had to right to rely on these statements and did in fact rely on them to her detriment.

5.38	Plaintiff suffered damages as a direct consequence of Defendants' fraudulent misrepresentations.

## EIGHTH CAUSE OF ACTION:

## NEGLIGENT MISREPRESENTATION

5.39    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.40    Defendants owed a duty of care to Plaintiff as her employers and prospective employers to refrain from making false statements about the core terms and conditions of Plaintiff's employment.

5.41    Defendants negligently asserted to Plaintiff that they would pay her for her work.

5.42    Defendants intended for Plaintiff to rely on these statements to begin working for them and to continue working for them.

5.43    Defendants knew that Plaintiff would probably rely on these statements.

5.44    Plaintiff justifiably relied on Defendants' statements and continued to work for Defendants.

5.45    As a result of these statements, Plaintiff was harmed and suffered economic and other damages.

## NINTH CAUSE OF ACTION:

## NEGLIGENCE

5.46    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

5.47    Defendants owed a duty to Plaintiff to not employ Plaintiff when they did not have the ability to pay Plaintiff.

5.48    Defendants breached that duty.

5.49    As a direct result of that breach, Plaintiff was harmed and suffered economic and other damages.

**VI. Prayer for Relief**

6.1    WHEREFORE, Plaintiff respectfully prays that this Court grants her the following relief:

a) Enter a declaratory judgment that Defendants Belinda Caron, James Caron, and Brittany Caron violated Plaintiff's rights under the TVPA, FLSA, MWHL, MWPCL, and Montgomery County Code, breached Plaintiff's employment contract with Defendants, and breached their duties under tort law through negligence and by making fraudulent misrepresentations to Plaintiff and by making negligent misrepresentations to Plaintiff;

b) Award Plaintiff her unpaid minimum wages, plus an equal amount as liquidated damages, for Defendants' violations of the FLSA;

c) Award Plaintiff her unpaid minimum wages and overtime wages for Defendants' violations of the MWHL;

d) Award Plaintiff her unpaid minimum wages and overtime wages, plus three times that amount as liquidated damages, for Defendants' violations of the MWPCL;

e) Order the Defendants to pay the employers' share of FICA and related taxes;

f) Award Plaintiff actual, incidental and consequential damages resulting from Defendants' breach of contract;

g) Award Plaintiff actual, incidental, consequential, and punitive damages resulting from the Defendants' fraudulent misrepresentations;

h) Award Plaintiff compensatory and punitive damages for Defendants' violations of the TVPA;

i) Award Plaintiff actual, incidental, and consequential damages resulting from the Defendants' negligent misrepresentations;

j) Award Plaintiff actual, incidental, and consequential damages resulting from the Defendants' negligence;

k) Enter a declaratory judgment that Defendants obtained Plaintiff's services by false pretenses, a false representation, or actual fraud;

l) Enter a declaratory judgment that Plaintiff's claims are excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A);

m) Enter a declaratory judgment that Plaintiff's claims against Defendants are for willful and malicious injuries caused by the Defendants;

n) Enter a declaratory judgment that Plaintiff's claims are excepted from discharge pursuant to 11 U.S.C. § 523(a)(6);

o) Award Plaintiff her reasonable attorney's fees, expenses and costs of court;

p) Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

q) Award Plaintiff such further relief as is just and proper.

Respectfully submitted,

s/ Nathaniel Norton
Nathaniel Norton, Esq.
Dist. of MD Bar No. 29231
Legal Aid Bureau, Inc.
500 E. Lexington St.
Baltimore, MD 21202
Tel. No. (410) 951-7815
Fax No. (410) 685-6951
Email: nnorton@mdlab.org
Attorney-in-charge for Plaintiff

Heather Gomes, Esq.
Dist. of MD Bar No. 27795
Legal Aid Bureau, Inc.
6811 Kenilworth Ave., Ste. 500
Riverdale, MD 20737

                                      Tel. No. (301) 560-2101
                                      Fax No. (301) 927-4258
                                      Email: hgomes@mdlab.org
                                      Co-counsel for Plaintiff